**ROSEN v. FURMBILT STORES, Inc.**

**FURMBILT STORES, Inc., v. ROSEN.**

**Nos. 1744, 1745.**

Circuit Court of Appeals, Tenth Circuit.

April 5, 1939.

Henry D. Moyle, of Salt Lake City, Utah, for appellant and cross-appellee.

Jesse R. S. Budge, of Salt Lake City, Utah, for appellee and cross-appellant.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The parties will be herein referred to as they appeared in the trial court.

Morris Rosen, plaintiff, instituted this action to protect his right to use the trade name, "Furmbilt," in connection with his retail clothing business, praying that defendant be enjoined from using the trade name "Furmbilt" clothes in Salt Lake City, Utah.

From 1909 to August 10, 1932, Morris Furman and Ida Furman were engaged in the business of manufacturing low-priced men's clothing, operating under the name of Furman & Company, a co-partnership. From 1909 to 1932, Furman & Company sold its clothing to the retail trade under the trade name, "Furmbilt." In 1922, changing its policy, it established its own retail stores in New York and New Jersey, selling "Furmbilt" clothing exclusively through said stores. Retail stores were later established in Colorado, California and Utah. The local stores were operated through corporations, 51% of the stock in each being owned by Furman & Company and the balance by a local party who operated the store.

In 1929, the F. & R. Clothing Company, a Utah corporation, was organized, 51% of the stock being owned by Furman & Company and the balance by Morris Rosen. It operated a store at Salt Lake City with Rosen as manager, selling "Furmbilt" clothing manufactured by Furman & Company. Furman & Company furnishing the materials, did the cutting and had the manufacturing process done by independent contractors. It purchased a small percentage of clothing for its stores from other manufacturers.

On July 2, 1932, a contract was entered into between the said F. & R. Clothing Company, a Utah corporation, as seller, and Morris Rosen, as buyer, and Morris Furman and Ida Furman, designated in the contract as partners, and Morris Furman, under which the Clothing Company agreed to sell all its stock of merchandise, fixtures, and other assets to Rosen, and to receive in payment therefor $11,900.11.

Furman & Company and Morris Furman, under said contract, were to sell to Rosen their 51 per cent. of the outstanding capital stock of said company, for which Furman & Company and Morris Furman were to receive out of the said purchase price the sum of $4,263.91.

The contract, to which was attached an inventory of all merchandise included in its assets, contemplated that Rosen would continue the business, providing that Rosen should make daily deposits with the Intermountain Title Guaranty Company of Salt Lake City to the credit of the Clothing Company and Furman & Company the full cost price of all merchandise listed in the inventory sold or otherwise disposed of by Rosen on the preceding business day, commencing with June 5, 1932, and that out of the moneys so deposited should be paid to Furman & Company $7,803.86, of which $3,539.95 was to go to Furman & Company for merchandise that had been sold and delivered by it

to the Clothing Company on open account, the remainder, to-wit, $4,263.91 to Furman & Company in payment of 51 per cent. of the capital stock of the Clothing Company, the moneys so deposited to be forwarded weekly to Furman & Company.

Provisions contained in said contract in part are set out in footnote[1].

[1] "10. Buyer shall be free to purchase merchandise for his business in the open market and from any company, association or individual with whom he may make satisfactory business arrangements. Buyer agrees that all merchandise now in transit from Partners and not now on the books of Seller shall be accepted and paid for by Buyer and that all such merchandise shall be received by Buyer on the consignment basis as in this paragraph provided with relation to merchandise hereafter delivered by Partners to Buyer. Partners do not hereby bind themselves to accept orders from Buyer, but any orders received by Partners from Buyer which Partners accept shall be filled and the merchandise therefor forwarded to and received by Buyer with the specific understanding and agreement that all such merchandise placed with Buyer shall be on a consignment basis and that the title to all such merchandise shall, until it is sold in the regular course of Buyer's business, remain in Partners; * * *

"14. All parties hereto specifically agree that the name 'Furmbilt' for use in reference to clothing is a trade name owned and controlled by Partners and that Partners have and possess valuable rights in connection therewith; that the use of said name heretofore in connection with the store operated by Seller in Salt Lake City, Utah, has been permissive and consential only and that Seller owns and possesses no rights to the continued use of said name and can convey no rights therein or thereto to Buyer; that Buyer possesses no right to the use of the name 'Furmbilt' in connection with the operation of any business which he may conduct, excepting as the same is granted to him by this agreement or other written license signed by Partners. With reference to the use by Buyer of the name 'Furmbilt' at the store to be conducted by him hereafter in Salt Lake City, Partners agree that Buyer may continue to use the trade name 'Furmbilt' in connection with his said business as long as Buyer is featuring 'Furmbilt Clothes' in his said place of business and is buying from Partners, their successors or assigns, and selling in said business, a substantial portion of the merchandise used by Buyer in his said place of business. If Buyer in good faith offers to purchase merchandise in substantial quantities from Partners and Partners shall refuse or be unable to deliver the same to Buyer, Buyer may during such period as Partners shall fail to deliver merchandise ordered from them by him continue to use the said name 'Furmbilt' in connection with said business, but Buyer agrees that at any time thereafter that Partners advise Buyer that they are ready to deliver merchandise to Buyer that Buyer will from the time of the receipt of such notice resume the featuring of 'Furmbilt Clothes' and the purchasing of merchandise from Partners in substantial quantities as hereinbefore provided. If Buyer discontinues the ordering of merchandise from Partners, or while Partners are willing to deliver merchandise to Buyer, Buyer fails to feature 'Furmbilt Clothes' or shall fail to sell in his place of business, or shall fail continuously to order from Partners a substantial portion of the merchandise used by Buyer in his place of business, or if Buyer shall sell or attempt to sell said place of business, or if he shall make an assignment for the benefit of creditors or effect a compromise with his creditors, or a Receiver be appointed for Buyer's business, or said business shall be liquidated through bankruptcy or other voluntary or involuntary proceedings, or if attachments be issued against said place of business or the property therein, *than* and in any of said events, Partners may at any time receiving notice thereof cancel all rights of Buyer to the continued or further use of said name 'Furmbilt' in connection with Buyer's business, or any business owned, maintained or conducted by Buyer, and all rights of Buyer to the use of said name shall immediately terminate and Buyer specifically agrees that upon such termination by Partners of Buyer's license and right to use the name 'Furmbilt,' that Buyer will remove from his business all signs, advertising, literature and other property and information containing the word 'Furmbilt,' or having any reference thereto.

"15. As long as Buyer is featuring in his place of business 'Furmbilt Clothes' and is purchasing from and paying to Partners for a substantial portion of all the merchandise sold by him in his place of business, Partners specifically agree that they will not, directly or indirectly, sell or offer for sale 'Furmbilt Clothes' to any other person or account in Salt Lake City, Utah, and will not themselves, directly or indirectly, open, operate, maintain or become interested in any place of

Furman & Company having experienced financial difficulties, on August 10, 1932, made an assignment for the benefit of creditors. Under order of court entered October 15, 1932, the trustee on October 24, 1932, sold all the assets of Furman & Company, including the trade name of "Furmbilt" to Samuel Tepfer.

Furmbilt Stores, Inc., was incorporated under the laws of New York by Morris Furman and Ida Furman on October 24, 1932. On October 27, 1932, Samuel Tepfer assigned his contract of purchase to Furmbilt Stores, Inc., it thereby acquiring all of the assets of Furman & Company, including the trade name "Furmbilt." On March 20, 1936, Furmbilt Stores, Inc., was licensed as a foreign corporation under the laws of Utah.

During the period of the trusteeship, Furman & Company was unable to furnish "Furmbilt" clothes to Rosen, and he had to obtain his clothing requirements from other manufacturers. On August 13, 1932, Rosen wrote Furman & Company a letter requesting it to furnish him with swatches so that he could select his supply for his fall stock of clothing. On August 22, 1932, Leroy Furman, son of Morris Furman, acting for Furman & Company, advised Rosen that Furman & Company had been obliged to make an assignment for the benefit of creditors and would not be able to take care of his clothing requirements.

About the first of 1933, Rosen became delinquent in his payments to the Guaranty Company, which had taken over the claim under the contract with Furman & Company, and the matter was placed in the hands of Wexler & Sternberg, attorneys in New York City, controversy having arisen with respect to certain items. Rosen was represented by White, Wright & Arnovitz of Salt Lake City. The matters were finally adjusted and payments fully made in December, 1934. The item of $7,803.86 had been promptly paid. The payments concerning which the controversy arose involved consigned merchandise. During the period of this controversy, Furman Stores, Inc., was unwilling to resume sales to Rosen.

It was the custom of Morris Furman to make two trips a year to Salt Lake City, one in December or January and the other in June or July. Such trips had been made in 1934, 1935, and 1936. In 1936, he was in Salt Lake City on four occasions, but did not on any of these occasions call on Rosen or attempt to sell him any merchandise. His explanation of his failure to call on Rosen up to January, 1935, was that he was not willing to resume business relations with Rosen until the old account was fully paid, giving no satisfactory explanation of his failure to call on Rosen in 1935 and 1936. Clothing merchants usually place their orders for spring and summer merchandise in the months of October, November, and December of the preceding year and for their fall and winter merchandise in April and May. During the time that Furman & Company was unable or unwilling to sell to Rosen, he purchased his requirements from other manufacturers, placing thereon the label "Furmbilt Clothes." Leroy Furman assisted him in securing these labels.

On October 22, 1932, and November 19, 1932, Rosen addressed letters to Furmbilt Stores, Inc., requesting it to sell him clothing, and in the latter letter requested swatches and prices. On November 23, 1932, Furmbilt Stores, Inc., wrote Rosen a letter in which it stated "We do not see any reason why we cannot take care of your requirements. We do not know if we will be in a position to send you samples for your selection because our system now is pretty much the same as before. However, if you wish to send us a trial open order for merchandise you may need, we will try to fill it to the best of our ability." It also requested a financial statement.

On December 3, 1932, Rosen wrote Furmbilt Stores, Inc., again requesting swatches, models, and prices. On January 23, 1935, Furmbilt Stores, Inc., wrote a letter to Rosen in which it referred to the fact that the balance of the account had been paid, and that it had a line of spring merchandise out of which it could supply his requirements, and stated it had obtained a financial report on him from Dun & Bradstreet up to June 15, 1934, and requested a statement as of December 31, 1934.

business in Salt Lake City, selling lines competitive to Buyer, provided, however, that nothing herein shall prevent Partners from selling to F. & R. Clothing Company in the event that Buyer defaults herein and the F. & R. Clothing Company continues in business."

On January 30, 1935, Rosen wrote Furmbilt Stores, Inc., that he had already purchased his spring merchandise and a part of it had already been received.

On February 5, 1935, Furmbilt Stores, Inc., wrote a letter to Rosen in which it expressed disappointment on not receiving an order and requested orders for any requirements which had not already been filled.

On July 27, 1935, Furmbilt Stores, Inc., wrote a letter to Rosen requesting him to purchase a portion of his fall requirements from it. On August 3, 1935, Rosen wrote Furmbilt Stores, Inc., that he had already purchased his fall merchandise. On August 9, 1935, Furmbilt Stores, Inc., wrote Rosen that it understood he was to communicate with it before placing additional orders for clothing and that it felt he was not living up to the contract. On August 15, 1935, Rosen wrote Furmbilt Stores, Inc., stating that their letter of August 9 came too late for placing an order for fall merchandise and offered to place an order for merchandise for the spring of 1936 if Furmbilt Stores, Inc., would furnish him within the next 60 days swatches, models, and prices.

On December 29, 1935, Furmbilt Stores, Inc., addressed a letter to Rosen through its attorneys advising him that he had breached his contract and that the license to use the name of "Furmbilt" was canceled and terminated.

Furmbilt Stores, Inc., and Rosen all expended large sums of money in advertising "Furmbilt" clothing.

On April 2, 1936, Rosen brought this suit in the District Court of Salt Lake County, Utah, against the Furmbilt Stores, Inc., to enjoin it from using the words "Furmbilt Stores, Inc.," in the operation of a man's retail clothing store in Salt Lake City, or elsewhere in the state of Utah. Furmbilt Stores, Inc., removed the case to the United States District Court and filed an answer and counterclaim seeking a decree adjudging it to have the exclusive right to use the trade name "Furmbilt Clothes" and to enjoin Rosen from using that name in Salt Lake City and within the state of Utah.

After the commencement of the action, Furmbilt Stores, Inc., opened a Furmbilt store at 230 South Main Street, Salt Lake City, using the word "Furmbilt" in connection with its business and on labels attached to men's clothing and furnishings, including shirts and ties.

With respect to swatches, Morris Furman testified that they were not furnished by Furman & Company; that he knew from sales reports the requirements of each store and shipped the merchandise as required. Rosen testified that swatches and samples had been furnished by Furman & Company, and that it was impossible for him to buy his requirements without swatches, samples, and prices.

The trial court found that during the period of the trusteeship, Furman & Company was unable to supply Rosen with merchandise, and that Furmbilt Stores, Inc., was unwilling to furnish merchandise to Rosen up to January, 1935; that the efforts by Furmbilt Stores, Inc., subsequent to January, 1935, were not made in good faith; that this was manifest by the fact that the letters of Furmbilt Stores, Inc., were written after the ordinary time for purchasing seasonable stock requirements and that Morris Furman did not call on Rosen and endeavor to sell to him merchandise when he was in Salt Lake City in 1935 and 1936.

It concluded that under the provisions of paragraph 10 of the contract, Furmbilt Stores, Inc., was not required to sell merchandise to Rosen, and under paragraph 15 the restriction on the right of Furmbilt Stores, Inc., to operate and maintain a competing store in Salt Lake City was operative only so long as Rosen was purchasing a substantial portion of all merchandise from Furmbilt Stores, Inc., and featuring the "Furmbilt" clothes, and that it was immaterial that Rosen's failure so to do resulted from the refusal of Furmbilt Stores, Inc., to sell merchandise to Rosen by reason of the provisions of paragraph 10, and that Rosen was not entitled to have Furmbilt Stores, Inc., enjoined from operating a store in Salt Lake City and using the trade name "Furmbilt."

It found that Rosen in good faith had offered to purchase a substantial quantity of his requirements from Furmbilt Stores, Inc., and that his failure so to do was due to the action of Furmbilt Stores, Inc., and concluded that under paragraph 14 of the contract, Rosen was entitled to continue to use the name "Furmbilt Clothes." Holding that neither party was entitled to relief, a decree was accordingly entered, no award being made as to costs.

Both sides have appealed.

■ The evidence justifies the findings of the trial court. Where a chancellor has considered conflicting evidence and made findings, same are regarded as presumptively correct. Neither has any serious mistake been made in the consideration of the evidence, or construction of the contract, nor has any error been made in the application of the law.

The defendant, Furmbilt Stores, Inc., under this contract is the owner of and entitled to the exclusive use of the trade name "Furmbilt" as against the plaintiff everywhere, except in Salt Lake City.

■ It was not to use the trade name "Furmbilt" in Salt Lake City under the conditions specified in Paragraph 15, where it is bound not directly or indirectly to sell or offer for sale "Furmbilt Clothes" to any other person or account in said city and not directly or indirectly to open, operate, maintain or become interested in any place in said city in selling lines competitive to Morris Rosen as long as he is featuring in his place of business "Furmbilt Clothes" and is purchasing from and paying to it for a substantial portion of all such merchandise sold by him in his place of business.

Morris Rosen is not and has not for a long time featured in his place of business at Salt Lake City "Furmbilt Clothes" manufactured by Furmbilt Stores, Inc., and has not during such time past been purchasing from and paying to Furmbilt Stores, Inc., for a substantial portion of all such merchandise sold by him in his place of business. This requirement as to him is unconditional.

Under Paragraph 10 of said contract Furmbilt Stores, Inc., are not bound to sell Rosen any merchandise. Whenever Furmbilt Stores, Inc., decided to open a store in Salt Lake City in competition with Rosen it could decline to sell him merchandise, thus preventing him by its own act from performing his part of the agreement.

Therefore it follows that even though Rosen be without fault in respect to the purchase of merchandise from defendant and the featuring and sale of such in his store, he is without remedy as against the competing store opened by defendant at 230 South Main Street, Salt Lake City, Utah.

■ In respect to the right of plaintiff, Rosen, to use the trade name "Furmbilt," in connection with his business at 118 South Main Street, Salt Lake City, the conditions are more favorable to him. Under paragraph 14 with reference to the use by Rosen of the name "Furmbilt" at said store conducted by him, defendant agrees that he may continue to use the trade name "Furmbilt" in connection with his said business as long as he is featuring "Furmbilt Clothes" and buying from defendant and selling in his said business a substantial portion of the merchandise used by him in his said place of business.

Provision in Paragraph 14 is in effect substantially the same as that in Paragraph 15. If Rosen in good faith offers to purchase merchandise in substantial quantities from defendant and it shall refuse or be unable to deliver the same to him, he may, during such period as it shall fail to deliver merchandise ordered from them by him, continue to use the said name "Furmbilt" in connection with his said business, but he agrees that at any time thereafter that defendant advises him that it is ready to deliver merchandise to him that he will from the time of receipt of such notice resume the featuring of "Furmbilt Clothes" and the purchase of merchandise from Furmbilt Stores, Inc., in such quantities.

If defendant is willing and can deliver such merchandise to Rosen and he fails to feature "Furmbilt Clothes" or to sell such in his place of business or shall fail continuously to order from defendant a substantial portion of such merchandise used by him in his place of business, defendant may at any time after receiving notice thereof, cancel all rights of Rosen to the continued and further use of said name "Furmbilt" in connection with his business or any other business owned, maintained or conducted by him in Salt Lake City, and all rights of Rosen to use of said name shall immediately terminate, and he specifically agrees that upon such termination by defendant of his license and right to use the name "Furmbilt" that he will remove from his business all signs, advertising, literature and other property and information containing the name "Furmbilt" or having reference thereto.

To justify the cancellation of Rosen's right to continue the further use by him of the trade name "Furmbilt" in connection with his business at 118 South Main Street, Salt Lake City, defendant prior to the 29th of December, 1935, must have

been "willing to deliver merchandise to Rosen." From the record it is clear that defendant was not willing to sell or consign such merchandise to Rosen prior to January, 1935, nor since then.

Rosen is without remedy against Furmbilt Stores, Inc., by reason of the store opened at 230 South Main Street, Salt Lake City, Utah, but the trial court properly held that equity should not enforce the cancellation or forfeiture of Rosen's right to use the trade name "Furmbilt" at the suit of the defendant.

The court concluded (1) that neither was plaintiff entitled to any relief as against defendant, nor (2) the defendant entitled to any relief as against the plaintiff, and (3) neither was the plaintiff entitled to recover his costs incurred therein, nor (4) defendant to recover costs incurred therein, and that (5) decree should be entered dismissing complaint of appellant, and (6) also counterclaim of the defendant.

The decree is affirmed.